

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-09-00435-CV

## IN THE INTEREST OF J.K.R. A/K/A J.K.C., CHILD

On appeal from the 135th District Court
of Victoria County, Texas.

## NUMBER 13-09-00436-CV

## IN THE INTEREST OF M.R.C., R.L.B. JR., AND A.B., CHILDREN

On appeal from the 267th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela**
**Memorandum Opinion by Justice Benavides**

Appellant, Amy Clark, appeals the district court's order for the involuntary

termination of her parental rights to her four children[1] under Texas Family Code section 161.001. *See* TEX. FAM. CODE ANN. § 161.001 (Vernon 2008). By four issues, Amy argues that the evidence presented during the termination hearing was legally and factually insufficient to support a finding that: (1) termination of the parent-child relationship was in the children's best interest; (2) she knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (3) she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and (4) she failed to comply with the provisions of a court order that specifically established the actions necessary for her to retake her children from the conservatorship of the Department of Family and Protective Services (the "Department"). We affirm.

## I. BACKGROUND

Amy is the mother of four children in the Department's custody: M.R.C., born July 2, 2002; R.L.B. Jr., born August 24, 2004; A.B., born March 3, 2006; and J.K.R., born May 9, 2007. Robert Baladez is the father of all four children and lived with Amy and the children intermittently.[2] Robert had a history of family violence and arrests predating the issues in this case. In October of 2006, the three eldest children were removed by the Department following a determination that Amy and the children had been physically abused by Robert. In March of 2007, Amy began living at Perpetual Help Home, a home

---

[1] In this opinion, we consolidate cause number 13-09-00436-CV, concerning Amy's parental rights to the three older children—M.R.C., R.L.B. Jr., and A.B.—and cause number 13-09-00435-CV, concerning Amy's parental rights to her youngest child, J.K.R., also known as J.K.C. (hereinafter, "J.K.R."). The two cases were tried together in the district court, and Amy now argues the same issues on appeal for each cause, with the exception of her fourth issue, which applies only to the three older children in cause No. 13-09-00436.

[2] Robert's parental rights to the three older children were involuntarily terminated on September 11, 2007, and his parental rights to J.K.R. were involuntarily terminated simultaneously with Amy's rights at the final hearing. Robert, however, is not a party to this appeal.

that provides a place to live for women and assists them in learning to take care of their children. J.K.R. was born while Amy was living at Perpetual Help, and one month later, in June of 2007, the three older children were returned to her care. Amy lived at Perpetual Help until September of 2007.

Stephanie Cavazos, a licensed clinical social worker, worked directly with Amy at Perpetual Help and testified that it was obvious to her that Amy loved her children, but was not ready to leave Perpetual Help in September of 2007; however "there was no changing [Amy's] mind" about leaving. Amy found an apartment with the help of the Department.

Just after Amy left Perpetual Help, a hearing to involuntarily terminate Robert's parental rights to the three older children was held. At Robert's hearing, Amy testified that Robert assaulted her on several occasions, had done so in front of the children, and was also physically violent towards the children. Further, Amy testified that Robert had used drugs in the home, sometimes in front of the children, and the house regularly was without electricity and running water. Additionally, Amy testified that termination of Robert's rights was in the best interest of the children, and the court thereafter terminated Robert's parental rights as to the three older children, M.R.C., R.L.B., and A.B.

On three occasions following this hearing, however, Amy took the children to visit Robert in prison, where he is currently serving a ten-year sentence for aggravated assault against a public servant.

In December of 2007, purportedly "to get some extra money" from her friend Wayne, a man that she was "kind of" dating, Amy went on a trip with Wayne in his "18-wheeler," leaving her four children with neighbors. At the time of the trip, J.K.R. was six months old. Amy left food and diapers with the neighbors and left a key to her house in case they ran out. Amy testified that she expected to be gone for a "few days." According

3

to Amy's testimony, because the truck broke down and she missed a bus in Dallas, she did not make it home when expected. According to the Department, she was gone for approximately eleven days. Amy contacted her CPS caseworker during this time, and informed the caseworker that she was going to help a friend move to Houston and would be gone for one day—not mentioning Wayne, the truck, or their stops in Florida and Georgia. When Amy returned from this trip, the Department removed all four children from her custody.

Between December of 2007 and the date that the final order was signed in this case on May 29, 2009, Amy was arrested on two separate occasions. First, Amy was arrested for harboring a fugitive in July of 2008 when she allowed Robert's brother to stay in her home. However, the record indicates that formal charges were never filed on this offense. Second, in March of 2009, just two months before her termination hearing, Amy was arrested and indicted for possession of cocaine. The record does not indicate the final disposition of this charge. Amy denied taking drugs with Robert during the time that she and the children were living with him, but following this arrest, Amy sent a letter to the Department and to the attorney ad litem for the children attempting to explain the charges and admitting to her cocaine use. In the letter, Amy wrote,

> On 3-20-09 around 2:30 p.m. a friend picked me up because I was feeling lonely and depressed. I decided to drink some beer. I have been feeling depressed for over a year . . . . My friend and I ended up in a local bar. I drank several beers to try to feel better. An acquaintance noticed that I was very depressed and offered me some cocaine. I didn't want to make a scene so I accepted it and put it in my pant pocket.

According to Karen Smithey, Amy's CPS caseworker, when asking about the letter, Amy said that she would test positive because she had taken some of the drugs.

4

On May 26, 2009, in a bench trial, the trial court heard the testimony of Amy and several other witnesses in a termination hearing initiated by the Department. Catherine Parsons-Key, who counseled Amy and the three older children, testified that both of the older boys remember violence in the home from the time Amy and Robert were together. She also testified that, although Amy was consistent with her attendance of counseling, in her opinion, Amy lacked an "understanding of the process of action consequences." Parsons-Key testified that she did not believe it would be in the best interest of the children to return them to their mother.

Dr. Michelle Moran, a licensed psychologist who had performed a psychological evaluation of Amy in 2007, testified at the hearing that Amy had a personality disorder with "dependent and avoidant personality traits" including issues with self-esteem, assertiveness, judgment, and goal-directed behavior. Dr. Moran concluded that if Amy had continued contact with Robert and had used drugs, termination of her parental rights would be in the best interest of the children.

Additionally, Karen Smithey, the CPS caseworker, and Stacie Marthiljohni, the court-appointed special advocate ("CASA"), each recommended that Amy's parental rights be terminated based on what they perceived to be a continued danger of abuse.

In its order dated May 28, 2009, the trial court terminated Amy's parental rights. This appeal ensued.

## II. STANDARD OF REVIEW

"Due process requires the application of the clear and convincing evidence standard of proof in parental termination cases." *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

5

sought to be established." *Id*. at 264 (internal quotations omitted). This standard of proof raises the burden of proof on the appellee upon appeal. "In a factual sufficiency review . . . a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. at 266 (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* "Rendition of judgment in favor of the parent would generally be required if there is legally insufficient evidence." *Id.*

The Texas Supreme Court has instructed that, "[t]he distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *Id*. "In evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). "We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so." *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266.

## III. ANALYSIS

The trial court terminated Amy's parental rights to the children pursuant to section 161.001 of the Texas Family Code, which provides that the parent-child relationship may be terminated based on any one of nineteen acts or omissions of a parent, along with a finding that the termination is in the best interest of the child. *See* TEX. FAM. CODE ANN.

6

§ 161.001; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("[T]he purpose of the State's intervention in the parent-child relationship is to protect the best interests of the children, not to punish parents for their conduct."). Therefore, if there was legally and factually sufficient evidence to support the trial court's finding that termination was in the best interest of the children, then any one, individual ground for termination under section 161.001 is sufficient to affirm the judgment.

By her first issue, Amy argues that the evidence presented during the termination hearing was legally and factually insufficient to support a finding that termination of the parent-child relationship was in the children's best interest. Specifically, Amy contends that "the testimony of the counselor, CASA representative, CPS caseworker and psychologist as to the best interest of the children did not establish by clear and convincing evidence that termination would be in the children's best interest." We disagree.

In accordance with *In re J.F.C.*, 96 S.W.3d at 266, we give due regard to the following evidence that we believe the trial court could have found to be clear and convincing: (1) Amy failed to provide a stable home for the children, often moving in and out of state housing and shelters, and failed to consistently provide electricity and running water in the home; (2) Amy displayed a desire to continue her relationship with Robert by visiting him in prison after his parental rights were terminated, despite her knowledge that Robert was abusive and a danger to the children; (3) Amy had, on occasion, left her children with neighbors for extended periods of time and had lied to caseworkers concerning her whereabouts; (4) Amy admitted to using cocaine and alcohol just weeks before the hearing; (5) Amy lacked the "understanding" necessary to raise children; (6) Amy had a personality disorder with "dependent and avoidant personality traits" including issues with self-esteem, assertiveness, judgment, and goal-directed behavior; and (7) in

7

the professional opinions of four different Department witnesses, it would be in the best interest of the children to terminate Amy's parental rights.

In our legal sufficiency review, we "resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so." *City of Keller*, 168 S.W.3d at 817; *In re J.F.C.*, 96 S.W.3d at 266. Applying this standard, we hold that the foregoing evidence was legally sufficient to allow a reasonable factfinder to form a firm belief or conviction that it was in the best interest of the children to terminate Amy's parental rights. *See K.E.W.*, 315 S.W.3d at 20.

In our factual sufficiency review, we must ask whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *See In re J.F.C.*, 96 S.W.3d at 266. Here, we weigh Amy's evidence that she regularly attended counseling, that she was living in a stable home, had a job cleaning houses, and that all relations with Robert were severed because he was serving an extended prison sentence. We cannot, however, say that this evidence is so significant as to prevent the factfinder from forming a firm belief or conviction that termination of Amy's parental rights was in the children's best interest. *See id*. Therefore, we hold that the evidence was factually sufficient to support the trial court's finding. Accordingly, we overrule Amy's first issue.

Having held that there was legally and factually sufficient evidence to support the finding that it was in the children's best interest to terminate Amy's parental rights, if any one of the three grounds upon which the trial court based its judgment is supported by legally and factually sufficient evidence, we must affirm the judgment.

By her second issue, Amy challenges the first ground on which the judgment is based as not being supported by legally and factually sufficient evidence. Specifically, she argues that the trial court's finding that she "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger[ed their] physical or emotional well-being" was not supported by legally and factually sufficient evidence. *See* TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon 2008).

Applying our standard for legal sufficiency, we look specifically to the evidence presented at trial that Amy: (1) had previously not kept a stable living environment; (2) kept the children in a violent home which had affected the two older boys significantly; (3) took the children, including J.K.R., to visit Robert in prison, despite knowledge of Robert's violent and abusive tendencies; (4) had not held a stable job; (5) allowed the three older children to be present while Robert drank and used drugs; and (6) admitted to using cocaine. We hold that the foregoing evidence was legally sufficient to allow a reasonable factfinder to form a firm belief or conviction that Amy had knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. *See K.E.W.*, 315 S.W.3d at 20.

Similarly, applying our standard for factual sufficiency, we note that Amy testified during the trial that many of these events would not recur, specifically, because she had obtained employment, had an appropriate living space, and would no longer have contact with Robert. Again, however, we do not believe this evidence is so significant as to prevent the factfinder from forming a firm belief or conviction that Amy had previously committed the statutorily proscribed act of knowingly placing or allowing the children to remain in conditions or surroundings which endangered their physical or emotional well-being. *See*

9

*In re J.F.C.*, 96 S.W.3d at 266. Additionally, we note that the statute does not require a likelihood of repetition in order to allow the court to terminate the parent-child relationship. *See* TEX. FAM. CODE ANN. § 161.001(1)(D) ("The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent *has . . .* knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child *. . . .*" (emphasis added)). For the foregoing reasons, we hold that the evidence was factually sufficient to support the trial court's finding. Accordingly, we overrule Amy's second issue.

Having found one ground upon which the judgment was supported by legally and factually sufficient evidence, we need not address whether the court's other two grounds for decision under subsections (E) and (O) of section 161.001 of the family code were supported by legally and factually sufficient evidence, and therefore, need not address Amy's third and fourth issues. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(E), (O) (Vernon 2008); *see also* TEX. R. APP. P. 47.1.

## IV. CONCLUSION

Finding no meritorious issue on appeal, we affirm the trial court's orders.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed this the
10th day of February, 2011.